Brian S. King, #4610
**BRIAN S. KING, PC**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SIDNEY W., individually and as guardian of T.F., a minor, | |
| Plaintiff, | **COMPLAINT** |
| vs. | Civil No. 2:16-cv-00954 EJF |
| UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and the VIACOM INCORPORATED EMPLOYEE HEALTH BENEFIT PLAN, | |
| Defendants. | |

Plaintiff Sidney W. ("Sidney"), individually and as guardian of T.F., through his undersigned counsel, complains and alleges against Defendants United Healthcare Insurance Company ("UHC"), United Behavioral Health ("UBH"), and the Viacom Incorporated Employee Health Benefit Plan ("the Plan"), as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Sidney is a natural person residing in Los Angeles County, California. T.F. is Sidney's son.

2.  Sidney is employed by Viacom Incorporated which provides a number of benefits for its employees including, but not limited to, a group health benefit plan. Sidney is a participant in the Plan and T.F. is a beneficiary of the Plan.

3.  UHC is an insurance company doing business in Utah and throughout the United States. UHC is the claims administrator for the Plan.

4.  UBH is a corporation doing business in the State of Utah and across the United States. UBH has a claims processing facility in Salt Lake County. UBH administers or insures mental health benefits for the Plan.

5.  The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 et. seq., of the Employee Retirement Income Security Act of 1974 ("ERISA").

6.  T.F. received medical care and treatment at Discovery Ranch ("DR"), a residential treatment facility in Utah County, State of Utah. DR is a licensed health care provider in the State of Utah and provides residential treatment for adolescent boys with mental health conditions.

7.  This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

8.  Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions and because the Defendants do substantial business in Utah.

## FACTUAL BACKGROUND

9.  T.F. was born in 1999 to a single woman with a family history of mental illness.

10. Sidney and his husband were close friends of T.F.'s mother and when she died after a prolonged illness, they adopted T.F. T.F. was five years old at the time of his adoption.

11. T.F. received grief counseling following his mother's death. T.F.'s therapist advised that T.F. might have attention deficit hyperactive disorder ("ADHD") and might need treatment for that condition in the future.

12. T.F. was impulsive and struggled with schoolwork but was gregarious and made friends easily. He was evaluated when he was in 6th grade and was diagnosed with ADHD. A trial with Ritalin was attempted two years later without success.

13. T.F. began self-harming (cutting and burning himself) when he was eight years old. As he moved through elementary and middle school, T.F.'s behavior continued to deteriorate and he began to withdraw and manifest a more negative attitude. He was smoking cigarettes and using illegal drugs.

14. Following the death of a maternal uncle with whom T.F. had been close, his behavior triggered a call from his school counselor who indicated serious concerns about T.F.'s well being.

15. The family continued to try to deal with T.F.'s problematic behavior and attitude but by 2014, T.F.'s school counselor was gravely concerned about T.F.'s well being. The counselor recommended a wilderness program, but Sidney and his husband wanted to exhaust all other options first. T.F. had a full psycho-educational evaluation and underwent new medication trials.

16. T.F. was admitted at the UCLA emergency department and was inpatient for a week in the psychiatric ward of the hospital for treatment of severe depression with suicidal ideation. After his discharge, T.F. continued at the partial hospitalization level of care, receiving intensive therapy on a daily basis while returning home each evening. That partial

hospitalization continued for T.F. until the Plan refused to cover additional treatment at that level of care.

17. T.F. continued to struggle in school and at home. He began refusing his medication and therapy and his behaviors continued to worsen, including another hospitalization for suicidal ideation.

18. T.F. was admitted at Pacific Quest Wilderness Program ("Pacific Quest") on August 14, 2014. Following his stabilization there, T.F.'s treating therapists recommended ongoing placement in a structured environment that could address all of T.F.'s conditions and help him continue to progress.

19. T.F. was admitted at DR on October 26, 2014. A psychiatric evaluation was completed for T.F. and he was diagnosed with major depressive disorder, recurrent - moderate to severe, anxiety disorder, ADHD, inattentive type, and oppositional defiant disorder.

20. T.F. struggled during his treatment at DR but he was consistently committed to the program and he did make progress.

21. At the time of his discharge, November 14, 2015, T.F. had not completed the program and he had mixed feelings about leaving DR. He knew he still had work to do but expressed optimism that, with continued treatment, he could reach his goals.

22. T.F. was discharged against advice with recommendations for placement in a private school that could meet his needs. It was also recommended by T.F.'s therapists that he continue with regular outpatient therapy and narcotics anonymous meetings and that he and his parents utilize a transition program.

23. The Plan paid for the first thirty-nine days of T.F.'s treatment. However, as of December 4, 2014, UBH, acting as the mental health claims administrator for the Plan, denied additional

coverage. The rationale for the denial of additional coverage was that ". . . the acute crisis bringing your child into this program for stabilization has quieted, and there has been improvement with his baseline behaviors." UBH went on to state that because T.F. was "working through is [*sic*] issues of trauma and not reporting thoughts of self-harm," his care was no longer eligible for coverage based on the Level of Care Guidelines for Mental Health Residential Rehabilitation Level of Care ("LOCG").

24. Sidney appealed the denial on May 29, 2015. In his appeal, Sidney first identified and cited the Continued Stay Criteria included in the LOCG for Residential Treatment. He pointed out that the bases for denial of coverage included in UBH's letter of December 4, 2014, were not consistent with the LOCG Continued Stay Criteria and argued that T.F.'s condition and treatment clearly met those criteria.

25. Sidney also provided a detailed history of T.F.'s development and treatment and included records with the appeal from his treatment at Pacific Quest and copies of psychological assessments completed by Jeffrey Bruno, Ph.D. and Jane Lewis, Ph.D.

26. Sidney stated that the treatment T.F. was receiving at DR met the guidelines of the American Academy of Child and Adolescent Psychiatry and was consistent with generally accepted standards of care. Sidney also argued that T.F.'s prior treating therapists unequivocally supported the need for residential treatment and that, based on his symptoms, T.F.'s treatment was medically necessary under the terms of the Plan.

27. On July 1, 2015, UBH maintained its denial. The letter stated that, based on a review of "the records," T.F. was compliant and cooperative and working hard. "While your child continued to face challenges as he worked on his issues, he had progressed to the point that he was not in danger of hurting himself or others."

28. Sidney appealed the denial for a second time on August 27, 2015. He addressed several specific problems in his letter. First, he noted that the same physician reviewer, Frank James, M.D., had performed both the first and second review, a violation of the terms of the Plan.

29. A second problem with UBH's denial was its continued reliance on an absence of self-harm behaviors to justify its position that T.F. did not meet guidelines for residential-level treatment. However, the guidelines for residential treatment require that patients *not* be at imminent risk for self harm in order to allow for treatment at a residential level of care.

30. Sidney provided updated records of T.F.'s treatment at DR and cited specific therapy notes to demonstrate that T.F. met guidelines for medical necessity.

31. Finally, Sidney noted that he had posed a number of direct questions and argument in his first appeal to which UBH had not responded in maintaining its denial. He requested that, in the event UBH continued to deny the claim, it respond to his questions and arguments.

32. UBH against denied the appeal on September 27, 2015. First, UBH stated that although DR was properly licensed as a residential facility in Utah, it might not meet "Optum guidelines as an acute residential facility." The letter went on to note that equine therapy and "other experiential activities" offered at DR lack scientific evidence of efficacy in the treatment of major depressive disorder. UBH then returned to its original basis for denial; that T.F. was committed to the program and not engaging in self-harm behaviors.

33. On January 29, 2015, Sidney wrote to UBH again and stated that, in light of UBH's consistent failure to address his questions and arguments, he was "giv[ing] you one last chance" to reconsider the denial. He noted that the discussion of whether or not DR would meet Optum guidelines as an "acute residential facility" was inconsistent with the Plan's definition of residential treatment. He also questioned the expertise and qualifications of

UBH's reviewer who, in using the terms "acute residential care," indicated a lack of familiarity with the nature of T.F.'s treatment.

34. Sidney also pointed out that "acute residential care" is non-existent: acute psychiatric care is provided in a psychiatric hospital and residential treatment is a *sub-acute* level of care. Tripp included documentation with his request including abstracts and articles in connection with the use of animals such as horses in therapeutic programs.

35. Sidney went on to argue again, citing to specific therapy notes, that T.F.'s treatment met UBH's guidelines for residential treatment.

36. UBH did not respond to Tripp's January 29, 2015 letter.

37. On March 28, 2016, Sidney requested an "Independent Review" of the claim.

38. Advanced Medical Reviews completed the review of the claim and maintained UBH's denial based on erroneous application of Milliman Care Guidelines (not UBH criteria) for Residential Acute Level of Care for Child or Adolescent, which describe short-term crisis care for a child or adolescent who is in imminent danger and is unstable.

39. Sidney exhausted his appeal obligations under the terms of the Plan and ERISA.

40. The wrongful denial of the claim for coverage of T.F.'s medical expenses has harmed Sidney in that he had to pay out-of-pocket for the medical care in an amount exceeding $125,000.

## CAUSE OF ACTION
### (Claim for Benefits Pursuant to 29 U.S.C. § 1132(a)(1)(B))

41. ERISA imposes higher-than-marketplace standards on the Plan, UBH and other ERISA fiduciaries. It sets forth a special standard of care upon a plan fiduciary, namely that the administrator discharge all plan duties solely in the interest of the participants and beneficiaries of the plan and for the exclusive purpose of providing them benefits. 29 U.S.C. §1104(a)(1).

42. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that plan administrators provide a "full and fair review" of claim denials that includes carrying out a meaningful dialogue with claimants who appeal denied claims. 29 U.S.C. §1104(a)(1)(D) and §1133(2).

43. UBH and the Plan's actions or failures to act constitute a breach of its fiduciary duties to Tripp and T.F. under 29 U.S.C. §1104 and §1133 by failing to provide benefits as required under the terms of the Plan and to provide a "full and fair review" of the denial of T.F.'s claims.

44. The actions of UBH and the Plan in failing to provide coverage for T.F.'s medically necessary treatment violate the terms of ERISA and the Plan.

45. In addition, UBH and the Plan failed to comply with the terms of the Plan and ERISA's claims processing procedures in communicating with Sidney during the appeal process.

46. The actions of UBH and the Plan have caused damage to Sidney in the form of denial of payment of medically necessary care rendered to T.F. at DR in an amount exceeding $125,000.

47. UBH and/or the Plan are responsible to pay for T.F.'s medical treatment at DR under the terms of the Plan and as required under ERISA along with pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. §1132 (g).

    **WHEREFORE** Plaintiff respectfully requests the following relief:

1. For a judgment in the total amount owed for T.F.'s medically necessary treatment at DR, plus pre and post judgment interest to the date of payment;

2. For an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g); and

3. For such further relief as the Court deems just and equitable.

DATED this 13th day of September, 2016.

                                                       /s/ Brian S. King
                                                     Brian S. King
                                                     Attorney for Plaintiff

Plaintiff's Address:

Los Angeles County, CA